**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KEANDRE HOLLINS, #Y50225,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21-cv-00161-JPG** |
| | ) | |
| **RICHARD WATSON, TRINITY SERVICE GROUP, and DR. DAVID MARCOWITZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**GILBERT, District Judge:**

Now before the Court for consideration are Defendants' Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Trinity Service Group ("TSG") (Doc. 46), Dr. David Marcowitz ("Dr. Marcowitz") (Doc. 48), and Richard Watson ("Sheriff Watson") (Doc. 52). Defendants seek dismissal of all claims against them based on Plaintiff Keandre Hollins' failure to exhaust his available administrative remedies at St. Clair County Jail before filing suit in federal court. Hollins opposes summary judgment. (Doc. 67).

On August 18, 2022, this Court held an evidentiary hearing consistent with *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). The Court consolidated this case with three other civil rights actions for the limited purpose of the *Pavey* hearing (*see* Order at Doc. 82): *Combs, Jr. v. Watson, et al.*, Case No. 21-cv-00071-JPG (S.D. Ill. 2021) (Doc. 32); *Brown v. Watson, et al.*, Case No. 21-cv-00138-JPG (S.D. Ill. 2021) (Docs. 70, 74, and 77); and *Good v. St. Clair County Jail, et al.*, Case No. 21-cv-01249-JPG (S.D. Ill. 2021) (Doc. 31). All four cases involve St. Clair County Jail inmates, the same grievance procedure, and the same or similar defendants and claims.

At the consolidated *Pavey* hearing, Defendants presented the testimony of Captain Shan Collins,[1] and Plaintiffs had an opportunity to cross-examine him. The Court then took the matter under advisement. For the reasons explained in more detail below, the Court finds that St. Clair County Jail's grievance procedure, as written during the relevant time period, was so confusing that it was incapable of use. The Prison Litigation Reform Act, 42 U.S.C. § 1997e, requires prisoners to exhaust available remedies before bringing suit. Administrative remedies based on St. Clair County Jail's grievance procedure, in effect during the relevant time period, were unknowable and consequently unavailable to Hollins. Accordingly, all pending summary judgment motions shall be **DENIED**.

## BACKGROUND

On February 9, 2021, Keandre Hollins filed this action for alleged violations of his constitutional rights at St. Clair County Jail ("Jail"). *See Brown v. Watson, et al.*, No. 21-cv-00138-JPG (S.D. Ill.) ("prior action"). Hollins originally filed suit with a dozen co-plaintiffs. (Doc. 1, prior action). On February 11, 2021, the Court severed the claims brought by each co-plaintiff into separate suits. (Docs. 1 and 2). This case focuses on Hollins' claims. (*Id.*).

In the Complaint, Hollins complains of exposure to unconstitutional conditions of confinement, including e-cigarette smoke, overcrowding, insects, mold, and COVID-19. (Doc. 1). Following initial screening pursuant to 28 U.S.C. § 1915A, Hollins was allowed to proceed with the following claims under the Eighth or Fourteenth Amendment:[2] **Count 1** against Sheriff Watson and TSG for instituting a policy, custom, or practice of allowing e-cigarettes at the Jail; **Count 2**

---

[1] Shan Collins identified himself as the St. Clair County Jail Captain and Assistant Jail Superintendent. For ease of reference, the Court will refer to him as "Captain Collins."

[2] The Fourteenth Amendment governs claims brought by a pretrial detainee, and the Eighth Amendment governs the claims of a convicted person. Although Hollins' exact legal status during the relevant time period was unclear from the allegations in the Complaint, his claims survived screening under both possible legal standards pursuant to 28 U.S.C. § 1915A.

against Sheriff Watson for subjecting Hollins to e-cigarette smoke, overcrowding, insects, and mold; **Count 3** against Sheriff Watson and Dr. Marcowitz for exposing Hollins to a serious risk of harm caused by the novel coronavirus by housing him with COVID-positive inmates, denying him access to personal protective equipment, and denying him adequate testing for COVID-19; and **Count 4** against Dr. Marcowitz for denying Hollins adequate medical care for symptoms of COVID-19. (Doc. 15).

Defendants TSG, Dr. Marcowitz, and Sheriff Watson filed separate motions for summary judgment on the issue of exhaustion. (Docs. 46, 48, and 52). In their motions, Defendants argue that Hollins' grievance file contains one captain's request / complaint[3] dated January 20, 2021, which states:

> I posits that housing me in the block with my pre-existing health conditions and the very real danger of contagion in custodial facilities is tantamount to cruel and unusual punishment prohibited by the 8th Amendment to the United States constitutional. (Hellins v. McKinney; 509 U.S. 25, 34 (1998) notes that the 8th Amendment prohibits a detainee from exposure to serious contagious diseases. Deliberate indifference to a serious medical need as well as violated the 14th Amendment equal protections Rights.

(*See* Global Ex. 2; Doc. 47, ¶ 9; Doc. 49, ¶¶ 10-11; Doc. 53, ¶ 9). Defendants assert that the form mentions no defendants and contains no particulars about Hollins' claims. (*Id.*). They point to no other grievance documents on file. (*Id.*). Because the captain's request / complaint was not properly exhausted before Hollins filed suit on February 9, 2021, Defendants seek summary judgment in their favor and dismissal of all claims against them. (*Id.*).

[3] The form used by Hollins bears the title of "St. Clair County Department Complaint-Request Form." (Global Ex. 2). In their written submissions, Defendants variously refer to this document as a "grievance" and a "captains request." In his testimony, Captain Collins also refers to the form as a "complaint/request," "complaint," and a "request." (*See, e.g.*, Docs. 47 and 51 (referred to as "grievance"); Doc. 49 (referred to as "captains request")). The Jail's grievance procedure refers to this same form as the "Complaint/Request Form" and the "Captains request." (Global Ex. 1).

In response, Hollins explains that he faced special circumstances, including legal blindness and denial of access to his prescription eyeglasses, which made exhaustion impossible. (Doc. 67). Moreover, jail officials thwarted his efforts to exhaust his administrative remedies when they refused to explain the procedure to him, provide him with forms, or respond to his complaints. (*Id.*). Even so, Hollins submitted a follow-up to his captain's request / complaint, which he labeled a "Grievance Form," on January 31, 2021, stating:

> Grievance Form
> forward to Major Grimes
> Copied
>
> Here at St. Clair County Jail there's two steps to the grievance process to be completed in order to exhaust all administrative remedies. 1) Request complaint form. 2) Detainee grievance forms in accordance with the detainee rules and regulations handbook pg. 20-21. Responses to them have time limits to each step. I submitted a complaint form to jail staff concerning matters below and never received a response or copy to the complaint. Also asked for grievance forms to exhaust administrative remedies. It violates detainee grievance procedures due process by staff and shows the intent of bad faith strategies to prevent lawsuit.
>
> I submitted a complaint form on file that the 8th amendment prohibits a detainee from exposure to serious contagious disease. Richard Watson, TSG Commissary, and Dr. Macovitz that virus is airborne. it's also medical malpractice not to provide proper treatment after being exposed and failure to protect us by selling e-cigs to patients that tested positive only further cases and traps us all in it.

(Global Ex. 3). It is undisputed that Hollins received no response to the grievance on this form. Captain Collins testified that the grievance was similar to one filed by Inmate George Gannon and was answered on Gannon's form instead. Because Hollins did what he could to exhaust his remedies before bringing suit, he seeks denial of the pending motions. (*Id.*).

## APPLICABLE LEGAL STANDARDS

### A. The Prison Litigation Reform Act

Lawsuits filed by pretrial detainees and convicted persons, alike, are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA states, in no uncertain

terms, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit, and the Supreme Court has interpreted the PLRA to require "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To properly exhaust, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Strict compliance with the Jail's grievance process is required. *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019); *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993) (Courts are "not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Failure to properly exhaust all available remedies before filing suit is grounds for dismissal of the lawsuit. *Pavey*, 544 F.3d at 741 ("Until the issue of exhaustion is resolved, the Court cannot know whether it is to decide the case or the prison authorities are to.").

The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation."). The requirement allows the Jail's administration an opportunity to fix the problem and mitigate the damage to a plaintiff. *Pozo*, 286 F.3d at 1023-24. Allowing otherwise would frustrate the

purpose of the grievance process. *Porter v. Nussle*, 534 U.S. 516, 526 (2002). On the issue of exhaustion, the defendants have the burden of proof. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

**B. Summary Judgment**

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey*, 544 F.3d at 739-41. The court decides contested issues regarding exhaustion and makes limited findings of fact. *Id*. at 740-41. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are decided by the judge and not a jury. *Id*.

**C. Grievance Procedure**

The St. Clair County Jail Grievance Procedure that was in effect during the relevant time period (*i.e.*, early 2021) states:

**GRIEVANCE PROCEDURE**

Superintendents Call

Superintendent's call is a time set aside for handling complaints that cannot be handled through normal channels. **(Ask for Complaint / Request Form)** In order to see the Superintendent regarding such a matter, you must submit a request in writing. Request forms are available and may be obtained from any officer on

> duty. Complete the requested information on the form and return it to the block officer. Your request will be forwarded through the proper channels. Your request will be screened and if it is something that can be handled by the officer or Sergeant on duty they will do it. For matters in which they cannot be handled, you will be called out at a time to speak with the Jail Superintendent or his designate.
>
> Step 1. A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it. The immediate supervisor shall provide a written response to the grieving detainee within 3 days after receiving the grievance. The original will be forwarded to the Jail Superintendent.
>
> Step 2. If the grievance is not resolved to the detainee's satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty eight (48) hours through the on duty shift supervisor. The grievance must be submitted to the Jail Superintendent within 3 days (not including weekends and holidays) of the decision of the Assistant Superintendent. The Jail Superintendent will review the response(s) and approve/disapprove them; if he disapproves them, he will take the necessary action to revise the previous response(s) according to the St. Clair County Jail Policies and Procedures Manual or to his professional opinion in a fair and impartial manner and return to the detainee within three (3) duty days. This shall constitute the final resolution of the grievance.
>
> Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(*See* Global Ex. 1, pp. 20-21) (emphasis in original).

## Analysis

St. Clair County Jail's Grievance Procedure suffers from numerous problems. These issues include its overall structure, poor organization, omission of deadlines, lack of clarity, inconsistent use of terminology, inconsistent interpretation, and inconsistent real world application. A plain reading of the grievance procedure reveals these flaws, which are underscored by the defendants' written submissions and witness testimony.

**A. Overall Structure**

The structure of the grievance procedure is confusing. Below the heading, "GRIEVANCE PROCEDURE," are four paragraphs containing instructions for filing complaints at the Jail. These paragraphs are arranged in the following order: (1) Superintendent's Call; (2) Step 1; (3) Step 2; and (4) Note. (*See* Global Ex. 1).

The first paragraph addresses Superintendent's Call. However, Superintendent's Call isn't part of the grievance process at all, according to Defendants and Captain Collins. Defendants' motions omit this paragraph entirely from their description of the grievance process. (*See* Docs. 47, 49, and 53). Captain Collins testified that Superintendent's Call is the step of last resort. When the grievance procedure does not resolve the inmate's issue, this step offers one final avenue to relief. Because the step isn't part of the grievance process, it doesn't belong under the heading "GRIEVANCE PROCEDURE." Even so, it occupies the entire first paragraph.

Defendants point to the second and third paragraphs, entitled "Step 1" and "Step 2," as describing the official grievance procedure. (*See id.*). Step 1 instructs an inmate to file a grievance with his or her shift supervisor. Step 2 instructs the inmate to forward any unresolved grievance to the assistant jail superintendent and, if still unresolved, on to the jail superintendent for final resolution. If Step 1 and Step 2 represent the Jail's entire grievance procedure, then these two paragraphs should not be buried in the middle of a four-paragraph document. The two paragraphs describing Step 1 and Step 2 should stand alone under the heading, "GRIEVANCE PROCEDURE."

The fourth paragraph contains the actual first step of the process, according to Defendants. (*Id.*). It includes the following instruction: "A Captains (sic) request must be submitted prior to the grievance procedure." (*See* Global Ex. 1). If this is the very first step an inmate must take to

address a complaint, then this instruction does not belong in the final paragraph of the procedure; it belongs at the beginning of the procedure.

If arranged in order of the steps an inmate must take to address a complaint, the procedure would consist of Paragraph 4, Paragraph 2, Paragraph 3, and Paragraph 1, in that order. If arranged in order of the Jail's official grievance procedure, it would consist of Paragraph 2 and Paragraph 3 and nothing more. And, if arranged in order of the Jail's actual grievance procedure, it would consist of Paragraph 4, Paragraph 2, and Paragraph 3, in that order. But, the procedure, as written, follows no logical order and makes little sense.

**B. Poor Organization**

The organization of each paragraph only adds to the confusion. By way of example, the Court focuses on the final paragraph, entitled "Note," which again states:

> Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(*See* Global Ex. 1). This paragraph consists of four sentences. All four sentences focus on different topics. The first describes the form used to file a grievance, which presumably refers to Step 1 and/or Step 2 above. The second sentence identifies who is responsible for instructing detainees how to use the grievance procedure and when, which presumably refers to the overall process. The third sentence describes the actual first step, *i.e.*, submitting a captain's request. This initial step is contained in the second-to-last sentence of the entire procedure and is not underlined, highlighted, or emphasized in any way. The final sentence provides instructions for notifying the Jail Superintendent if no response is received to the captain's request, without indicating whether this refers to an appeal of the captain's request, Step 1, Step 2, or the Superintendent's Call.

**C. Omission of Deadlines**

The procedure consistently omits deadlines for action on the part of inmates and jail personnel. For example, the final paragraph states: "A Captains request must be submitted prior to the grievance procedure." (*See* Global Ex. 1). However, it does not indicate when the inmate should submit the captain's request. The next sentence instructs the inmate to contact the jail superintendent "[i]f no response is received within 15 calendar days." (*See id.*). Jail personnel and inmates, alike, are left wondering: within 15 calendar days of what? The procedure does not say. It could be within fifteen days of: the incident prompting the captain's request, the date the inmate submits the captain's request, the date that jail personnel pick up the captain's request, or something else altogether. The procedure does not set forth a clear timeline.

**D. Lack of Clarity**

The instructions do not clarify whether inmate action is required sequentially or in parallel. A comparison of the final paragraph and Step 1 illustrates this point. Recall that a captain's request is the first actual step in the process, and an inmate is required to notify the Jail Superintendent if no response is received within 15 days. At the same time, Step 1 states: "A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it." (*See* Global Ex. 1). It is unclear whether the inmate must file a captain's request and a grievance at the same or nearly-the-same time or wait for a response to the captain's request and then file a grievance. The instructions confuse, rather than clarify, the matter.

**E. Inconsistent / Confusing Use of Terminology and Forms**

The inconsistent use of terms, such as "captain's request," "complaint / request form," "grievance," and "detainee grievance form," only muddy the waters. In the final paragraph of

instructions, describing the first actual step in the process, the procedure refers to a "Captain's request" and a detainee grievance form. The superintendent's call refers to a complaint / request, and Steps 1 and 2 refer to a grievance. Whether these terms overlap or have entirely different meanings is not at all clear from the written procedures. Captain Collins testified that in practice, the "complaint / request form" has been used for both the "Captain's request" and to initiate the "Superintendent's Call" procedure of last resort. Testimony also confirms that the Jail's forms have changed over time, making use of titles that did not correspond to steps in the process.

**F. Inconsistent Interpretation**

As a result of the problems discussed above, the Jail's grievance procedure is susceptible to numerous interpretations. Defendants describe the process as straightforward. (Docs. 46, 48, and 52). However, they describe it differently, and their own inconsistencies call into question the simplicity of the procedure.

According to Dr. Marcowitz, the "Captains Request is the first step to initiating the Grievance Procedure, with the need to inform the Jail Superintendent should no response be received within 15 calendar days." (Doc. 49, ¶ 3). A "grievance" may be submitted following submission of the "Captain's Complaint" within 24 hours of learning of the circumstances or conditions prompting the grievance. (*Id*. at ¶ 4). If the "grievance" is not resolved to the detainee's satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty-eight hours through the on-duty shift supervisor. (*Id*. at ¶ 5). Once the Assistant Jail Superintendent issues a decision, it will be submitted to the Jail Superintendent, who will review the response for approval. (*Id*. at ¶ 6). The Jail Superintendent's response shall constitute final resolution of the grievance. (*Id*. at ¶ 7). Put differently, a detainee must complete Paragraph 4, Paragraph 2, and Paragraph 3 of the Jail's

grievance procedure, in that order, to exhaust their administrative remedies before bringing suit. Paragraph 1 should be disregarded.

According to Trinity Service Group and Sheriff Watson, the Jail's grievance process is "multi-step." (Doc. 47, ¶ 4; Doc. 53, ¶ 4). Rather than attempting to summarize each step of the multi-step procedure, these two defendants quote "Step 1" and "Step 2" directly from the Detainee Rules and Regulations Handbook. (Doc. 47, ¶¶ 5-7; Doc. 53, ¶¶ 5-7; Global Ex. 1). Put differently, a detainee must comply with Paragraphs 2 and 3 of the Jail's grievance procedure before bringing suit. Paragraphs 1 and 4 should be disregarded.

At the *Pavey* hearing, Captain Collins testified that the grievance procedure is a two-step process. The first step is to submit a written captain's request/complaint. If the problem is not resolved, the second step is to file a written grievance. Put differently, a detainee should *either* comply with Paragraph 4, Paragraph 2, and Paragraph 3 (described by Marcowitz) or Paragraphs 2 and 3 (described by TSG and Watson), but it is not clear which controls. Regardless, Paragraph 1 should be ignored.

**G. Inconsistent Real World Application**

Captain Collins, the defendants' only witness, repeatedly acknowledged that the Jail's grievance procedure, as written during the relevant time period, is confusing--so confusing, in fact, that inmates were not actually required to follow it. Moreover, the procedure at issue is no longer in effect. Captain Collins testified that it has been re-written to clarify the grievance procedure, but he could not recall when the revised procedure took effect and was distributed to detainees.

Despite this testimony, all three defendants filed motions for summary judgment against Hollins. Each argues that Hollins failed to exhaust his administrative remedies at the Jail before filing suit. Defendants in the three other cases also filed for summary judgment on the same

grounds. The consolidated *Pavey* hearing addressed eight summary judgment motions stemming from the same procedure. If defendants did not expect the inmates to comply with the procedure, it is unclear why every single defendant filed for summary judgment on the issue of exhaustion.

Defendants argue that Hollins did not include enough detail about his complaints to put them on notice of any problem. The Court rejects this argument. The grievance procedure does not define what must be included in a captain's request, complaint / request, or grievance. The procedure states that a grievance must include "particulars," but this term is undefined. Captain Collins also testified that when jail officials respond to detainee complaints / grievances, they do not inform the detainee when their form lacks sufficient particulars or is otherwise flawed. The Court will not require Hollins to guess who, what, when, or how to grieve his complaints at the Jail, given the procedure at issue. Defendants have not met their burden of establishing his failure to exhaust available remedies.

Although the Seventh Circuit demands strict compliance with the PLRA's exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id.*; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738).

Three circumstances generally render a prison's grievance process unavailable because it is not capable of use to obtain relief. *Ross*, 578 U.S. at 643. First, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Id*. (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Ross*, 578 U.S. at 642. Second, an administrative scheme might be so confusing that it is incapable of use. In other words, a grievance process exists, but if "no ordinary prisoner can make sense of what it demands," that process is "unknowable" and thus unavailable. *Reid v. Balota*, 962 F.3d at 329 (quoting *Ross*, 578 U.S. at 642). Finally, a grievance process is unavailable when prison officials thwart an inmate's efforts to exhaust his administrative remedies through "machination, misrepresentation, or intimidation." *Id*. The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

No ordinary person could make sense of the Jail's grievance procedure in effect during the relevant time period. As written, it was unknowable and incapable of use by Hollins. As such, the grievance procedure at issue was unavailable to him. Moreover, Hollins was legally blind and was refused all requests for help understanding and using it. In reality, he had no avenue to relief at the Jail before bringing suit to address his claims against the defendants in federal court. Accordingly, summary judgment shall be denied.

## CONCLUSION

**IT IS ORDERED** that the Motions for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Trinity Service Group (Doc. 46), Dr. David Marcowitz (Doc. 48), and Richard Watson (Doc. 52) are **DENIED**. **COUNTS 1, 2, 3,** and **4** against these defendants shall proceed past summary judgment.

The matter of exhaustion of administrative remedies now being resolved, the four cases are **NO LONGER CONSOLIDATED** and shall move forward **SEPARATELY**. Moreover, the stay on merits discovery is **LIFTED**, and the parties can commence discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

**IT IS SO ORDERED**.

**DATED: 8/29/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**